UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
GAIL JONES,

                              Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
----------------------------------------------------------- x

**MEMORANDUM & ORDER**

10 CV 5831 (RJD)

DEARIE, District Judge.

       Pursuant to 42 U.S.C. § 405(g), Gail Jones appeals the Commissioner of Social Security's final decision denying her disability benefits under the Social Security Act. Jones, who dropped out of high school in twelfth grade, worked as a certified nurse assistant from 1985 until 2006, when she fell while working at a nursing home. Born August 30, 1962, Jones was 44 years old at the time of her accident. She has not worked since. The Commissioner found Jones capable of performing sedentary work. Both parties move for judgment on the pleadings. Because the ALJ failed to apply the treating physician rule or adequately evaluate plaintiff's claims of pain, the Commissioner's decision is vacated, and the matter is remanded for further consideration.

       On November 5, 2007, plaintiff filed for disability benefits. After her application was denied, plaintiff had a hearing before ALJ Sol Wieselthier on September 29, 2009. Jones testified and was represented by counsel. On December 21, 2009, ALJ Wieselthier issued an opinion finding that Jones had discogenic and degenerative back impairments and affective disorder, but that these impairments did not meet or equal any listed impairment. Based primarily on the testimony of a non-examining medical expert, the ALJ concluded that Jones

1

retained a residual functional capacity to perform sedentary work. In his written opinion, the ALJ rejected Jones's characterization of the severity of her pain, finding her allegations "not wholly credible." Tr. 18. On October 7, 2010, the Appeals Council denied plaintiff's request for review. This action followed.

In reviewing a denial of benefits, the Court must determine whether the Commissioner's conclusions are supported by substantial evidence. See, e.g., Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003) (quoting Curry v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (internal quotation omitted). Here, both parties move for Rule 12(c) judgment on the pleadings, each arguing that he is entitled to judgment as a matter of law. See Alcantara v. Astrue, 667 F. Supp. 2d 262, 272-73 (S.D.N.Y. 2009) (Sullivan, J.). Because the ALJ failed to apply the treating physician rule or to properly evaluate plaintiff's credibility, the case is remanded in accordance with this Memorandum.

The Court assumes the parties' familiarity with the plaintiff's record and the five-step analysis for evaluating disability claims. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998); see also 20 C.F.R. § 404.1520.

This Court does not understand how the ALJ, after twice volunteering that plaintiff's testimony was "credible" and determining that Jones's impairments could reasonably cause her pain, nonetheless decided that Jones exaggerated her complaints. See Tr. 18, 60, 63. "If the ALJ decides to reject subjective testimony concerning pain . . . he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the

2

ALJ's disbelief and whether his determination is supported by substantial evidence." Taub v. Astrue, 2011 WL 6951228, at *8 (E.D.N.Y. Dec. 30, 2011) (Ross, J.) (internal quotation omitted). Not only does the ALJ fail to identify substantial evidence for judging Jones incredible, he overlooks, without explanation, substantial contrary evidence in her favor.

First, the ALJ finds Jones did not have "significant ongoing medical treatment other than . . . physical therapy and prescribed medications" (thrice daily doses of Oxycontin, Flexeril, and ibuprofen, which plaintiff testified did not help). See Tr. 18, 41-42, 59. The ALJ does not address Dr. Lambrakis's "strenuous request[s]" for spinal epidurals, wrist surgery, and left and right knee surgery, procedures plaintiff never had because Workers' Compensation would not authorize them. See, e.g., Tr. 321, 324, 326. And, without examining Jones's physical therapy records, it is premature for the ALJ to disregard them. ALJ Wieselthier also states plaintiff had "no longitudinal history of psychiatric treatment for depression," but does not mention that plaintiff stopped seeing her psychiatrist, Dr. Ladopaulos, because of pain, or that she had restarted mental health treatment by the date of her hearing (records the ALJ did not attempt to pursue). See Tr. 18, 55-56. In characterizing plaintiff's depression as "dysthymia . . . [or] mild depression" (Tr. 18), the ALJ parrots the opinion of a one-time consulting psychiatrist (Tr. 266) rather than the opinion of plaintiff's treating psychiatrist, who diagnosed "mood disorder due to medical condition" and prescribed a daily anti-depressant (Tr. 227).

Second, this Court cannot understand the ALJ's statement that Jones "testified that she was able to handle routine activities of daily living." Tr. 18. In fact, Jones testified that she cannot walk more than half a block at a time; cannot sit more than 20-30 minutes; and cannot bend down (preventing her from tying, or wearing, lace-up shoes). Tr. 42-44, 46. Jones's

bedroom is on the second floor, and she described climbing the stairs like someone familiar with every step:

> ALJ: Upstairs, how many steps up?
> Jones: Six, the[n] a flat surface, and then another six.
> . . .
> ALJ: Are you able to climb it without any problems?
> Jones: I go slowly, but I can get up there. And sometimes I go backwards. It helps when I go backwards.
> ALJ: How many times a day do you climb?
> Jones: Not much. . . . Because I'm mostly lying down most of the time. . . . Once I go up, I stay up.

Tr. 47-48. Jones also testified that her fiancé does the shopping, and her young children do the laundry, clean, and help cook. Tr. 51-53. Also, the ALJ ignored plaintiff's long, uninterrupted work history, which entitles her to "substantial credibility." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983). In this context, the ALJ's cavalier rejection of plaintiff's testimony is hard to understand. On remand, the ALJ should clarify his assessment of Jones's credibility. See §§ 404.1529(c)(3)(i)-(vii).

Plaintiff's primary treating physician, Dr. Lambrakis, filled out an RFC with restrictions preventing plaintiff from doing even sedentary work. Tr. 424-26. Dr. Lambrakis opined that, in an eight-hour work day, Jones required four hours of rest, could sit for two hours at most, and could stand or walk for no more than two total hours. Id. Furthermore, Dr. Lambrakis stated Jones could only sit continuously for 30 minutes before having to change her posture by walking about for an hour. Tr. 424. For every continuous hour that Jones walked or stood, Dr. Lambrakis advised that she needed to take 30 minutes off to sit or recline. Tr. 424. Rejecting Dr. Lambrakis's opinion, the ALJ instead relied on the opinions of Dr. Weiss (a non-examining consultative physician) and the DDS examiner. See Tr. 18. The Commissioner must afford a treating physician's opinion "controlling weight with respect to the nature and severity of a

4

claimed impairment" if that opinion is "well-supported by medically acceptable . . . diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." Carvey v. Astrue, 380 F. App'x 50, 51 (2d Cir. 2010) (partially quoting §404.1527(d)(2)). The ALJ must "give good reasons" for assigning less than controlling weight to a treating physician's opinion. § 404.1527(d)(2). Not only did Dr. Weiss never examine plaintiff, he brushed off MRI evidence that tended to support Jones's allegations of pain. And, by plaintiff's hearing date, the disability examiner's opinion that Jones could perform light work was 1.5 years stale, and did not account for her deteriorating condition. See Tr. 279-84.

Dr. Weiss also based his RFC on an incomplete record. Dr. Weiss never reviewed Dr. Lambrakis's RFC, and he did not see Dr. Xethalis's records until he was in the middle of testifying. See Tr. 69; see also Tr. 60 (ALJ stating Dr. Weiss "did not have a lot of [Dr. Lambrakis's] reports" until Dr. Weiss testified). Dr. Weiss did not mention Dr. Lambrakis's reports of plaintiff's worsening condition between 2007 and 2009, perhaps because he had not seen them, or perhaps because on his cursory review, Dr. Weiss believed Dr. Lambrakis "repeat[ed] himself pretty much all the way through." Tr. 66. In addition, there are gaps in plaintiff's record that the ALJ did not fill. Although Jones attended physical therapy three times a week, these reports are not included. The ALJ never obtained legible records from Dr. Ladopaulos, plaintiff's treating psychiatrist,[1] or any reports from plaintiff's new psychologist. See Tr. 55-56.

---

[1] ALJ Wieselthier, who called the notes "impossible to read" during Jones's hearing, seems to have disregarded the records rather than trying to obtain better copies. Tr. 36 (ALJ: "To be very honest with you, I can't read it. . . . It's almost impossible to read. I think I gave up, that's one of the reasons I don't have notes on it.")

5

What records Dr. Weiss did examine do not provide substantial evidence for his opinion. Dr. Weiss adopted the findings of Dr. Chang, a non-treating, consultative physician who concluded that Jones had no sitting restrictions and could walk or stand six hours in an eight hour day. Tr. 262. Although one of plaintiff's treating physicians, Dr. Katz, did opine that Jones's limitations would allow sedentary work, Dr. Weiss did not mention Dr. Katz's records during his testimony.[2] Dr. Weiss also minimized plaintiff's MRI findings, even though MRIs of Jones's right knee and lumbosacral spine give some objective basis for her reports of intense pain. An MRI of plaintiff's lumbosacral spine taken on June 7, 2007 showed lumbar lordosis, moderate disc bulge with thecal sac compression, and sacroiliac joint disease (Tr. 290-91), and a July 5, 2007 EMG showed radiculopathy in the same area (Tr. 299). Dr. Weiss dismissed these MRI findings as "asymptomatic" conclusions that "may or may not be significant." Tr. 64-65. Rejecting orthopedic surgeon Dr. Xethalis's diagnosis of a torn medial meniscus, Dr. Weiss testified that plaintiff's right knee MRI showed only that "one of [her] supporting ligaments is perhaps narrowed a bit." Tr. 65, 69. In reference to plaintiff's right wrist MRI, Dr. Weiss called any findings "minimal" because "they are readily removed with simple surgery." Tr. 65. Dr. Weiss did not mention, however, that Workers' Compensation would not authorize wrist surgery.

There is simply not substantial evidence to support the ALJ's decision that Jones is capable of sedentary work. See Halloran, 362 F.3d at 31. On remand, the ALJ must explicitly state what weight he grants the opinions of plaintiff's treating and consultative doctors, and he must give good reasons for discounting any treating physician's opinion in favor of a

---

[2] To the extent that the ALJ relied on Dr. Katz's opinion, he explains neither how he reconciled Dr. Katz's opinion with Dr. Lambrakis's nor whether Dr. Katz's opinion should remain relevant since plaintiff continued to see Dr. Lambrakis monthly for two years following her final appointment with Dr. Katz. See Tr. 220-21.

6

consultative's or non-examining doctor's. See Brickhouse v. Astrue, 331 F. App'x 875, 877 (2d Cir. 2009).

Because the vocational expert's recommendations at Jones's hearing were based on the ALJ's hypothetical, the ALJ must present a new hypothetical accurately reflecting plaintiff's impairments on remand. See Pokorny v. Astrue, 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010) (Garaufis, J.) (legal error where ALJ gave expert inaccurate hypothetical).

For the reasons stated above, the defendant's Rule 12(c) motion is denied, and plaintiff's cross-motion is granted to the extent that the case is remanded for further development of the record. On remand, the ALJ should do the following: (1) apply the treating physician rule in determining plaintiff's RFC; (2) "give good reasons" if he does not grant the treating physicians' opinions controlling weight; (3) develop the record by obtaining legible copies from Dr. Ladopaulos and records from Jones's physical therapist and current psychologist; (4) allow any medical expert ample time to examine plaintiff's entire record before opining; (5) assess plaintiff's credibility using the proper § 404 factors and explain his analysis; and (6) pose an accurate hypothetical to the vocational expert. The decision of the ALJ is hereby vacated, and the case remanded in accordance with the foregoing.

SO ORDERED.

Dated: Brooklyn, New York
August 27, 2012

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge